UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LAWRENCE MAHER, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Criminal No. 04-93-P-S |
| ) | |
| ) | Civil No. 07-195-P-S |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Lawrence Maher has filed a 28 U.S.C. § 2255 motion seeking habeas relief from his federal conviction and his 262-month career-offender sentence on a one-count cocaine trafficking offense. Maher, who was unsuccessful in his direct appeal and in obtaining certiorari review from the United States Supreme Court[1], presents four Sixth Amendment ineffective assistance of counsel claims. The United States has filed a memorandum seeking summary dismissal. I recommend that the Court deny Maher 28 U.S.C. § 2255 relief.

*Discussion*

*Applicable Standards*

Maher is entitled to 28 U.S.C. § 2255 relief only if his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack" 28 U.S.C. § 2255 ¶1.

---

[1] See United States v. Maher, 454 F.3d 13 (1st Cir. 2006), cert. denied, 127 S.Ct 568 (Nov. 6, 2006). This 28 U.S.C. § 2255 motion was signed November 5, 2007, and received by and filed in this court on November 8, 2007. The United States has made no argument that it is untimely.

Sixth Amendment ineffective assistance claims are properly raised in a 28 U.S.C. § 2255 proceeding.  See United States v. Mercedes, 428 F.3d 355, 361 (2005).

The two-pronged performance/prejudice Strickland v. Washington, 466 U.S. 668, 687-88 (1984) test applies to ineffective-assistance claims. "In order to prevail" under Strickland, "a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688, 694). "In other words, a defendant must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting therefrom." Id.

*The First Circuit's Summary of the Facts*

The First Circuit Court of Appeals recounted in detail the facts underlying Maher's conviction, a summary that is helpful in understanding Maher's 28 U.S.C. § 2255 grounds.  Essentially what happened was that a cooperating informant, himself arrested on cocaine charges, told law enforcement that Maher was his source of supply.  When the informant was unable to consummate a monitored drug deal with Maher, a female agent, pretending to be someone named "Sue," made arrangements to meet Maher in a parking lot in Maine for an unspecified purpose (cocaine was never mentioned).  Maher showed up intoxicated and with a significant quantity of cocaine.  He was arrested and these charges ensued.   See United States. v. Maher, 454 F.3d 13, 15 -17 (1st Cir. 2006).

*Maher's Four Ineffective Assistance of Counsel Claims[2]*

**Attorney's Failure to Interview or Call Material Witnesses**

In his first 28 U.S.C. § 2255 ground Maher accuses his attorney of delivering ineffective assistance when he denied Maher "a viable defense" by failing to interview or otherwise investigate the potential testimony of three witnesses: Robert Perry, Carol Fogg, and Susan Connelly. (Sec. 2255 Mem. at 18[3]; see also id. at 7-12.) Maher explains that in his view the Government's evidence of his intent to distribute 163 ounces of cocaine was, one, his communication with informant William Johnson; two, his communication with undercover agent Barnard; and, three, the quantity of drugs that Maher possessed at the time of his arrest. (Id. at 29.)

With respect to the Johnson communications, Maher points to the evidence that they were to transact the drug deal on July 22, 2004, but that Johnson was not able to contact Maher by telephone on the night of July 21, 2004, or the day of July 22, 2004. (Id. at 19-20.) As a result, Agent Barnard posed as Sue Connelly and called Maher indicating "that she was 'interested in meeting him to get something,'" implying drugs. (Id. at 20.) When Johnson finally reached Maher by telephone Maher told him to call back later because he was at the store (the store being Radley's Market in Old Orchard Beach) waiting for a friend (the friend being Agent Barnard posing as Sue Connelly). (Id.) Maher contends that the prosecution implied at trial that Johnson and Maher were to meet at the same location. (Id.) "If, as purported by the Government, Mr. Maher and

---

[2] The United States devotes a portion of its memorandum to an argument that several of Maher's collateral claims are procedurally barred. (Mot. Summ. Dismissal at 9-10.) However, Maher has unquestionably presented each of his four grounds as ineffective assistance claims. See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002).

[3] I refer to the page numbers assigned by the electronic docket to avoid confusion; the difference in page number is a consequence of Maher's inclusion in his memorandum of five prefatory pages.

Mr. Johnson were buddies and Mr. Maher was about to meet with agent Barnard so she could get some drugs, why then could they also meet at Radley's Market to transact their re-arranged drug deal[?]"  (Id. at 20-21.)

With regards to the potential testimony of Robert Perry and Carol Fogg, Maher maintains that these two witnesses could have rebutted the prosecution's evidence that Maher came to Maine to sell drugs and was intoxicated prior to his July 22, 2004, arrest. (Id. at 21.)  Maher asserts that Perry would have testified that Maher came to Maine to drop off a rebuilt motorcycle engine and that Perry and Maher planned to enjoy themselves for a couple of days in Old Orchard Beach; to this end they met Carol Fogg and a girlfriend at the Whaler Bar the evening of July 21, 2004.  (Id. ; Perry Aff. ¶¶ 1,2; Fogg Aff. ¶ 2.)  Maher also believes that Perry and Fogg could have refuted the accusation that Maher was using drugs the night of July 21 and was disorganized as a consequence.  (Id. at 21.)  He points to the Perry and Fogg affidavit statements in which they relate that the morning of July 22 they had breakfast with Maher at a restaurant located at Radley's Shopping Plaza, Maher was not there to sell drugs, and that Maher received the Agent Barnard call, a call that he believed was from Connelly who Maher was looking forward to getting together with.  (Id.; Fogg Aff. ¶¶ 4, 5; Perry Aff. ¶¶ 2, 3.) For her part Connelly could have testified that her relationship with Maher had nothing to do with drugs.  (Id. at 21-22; Connelly Aff. ¶ 6.)[4]

Maher summarizes his attorney's trial strategy as focused on stressing to the jury that the federal agents used state authorities to arrest Maher on operating under the influence charges (having informed them that Maher was suspected of dealing drugs)

---

[4] Maher asserts that his relationship with Connelly was romantic and he was hoping to see her for that purpose. (Id. at 22; Maher Decl. ¶¶ 6,7.)  However, the Connelly Affidavit does not make this representation and Maher is not arguing that he would have taken the stand in his own defense.

4

with the understanding that the OUI charges were a lever to obtain evidence of the federal drug offense.  (Id. at 22-23.)  The defense "urge[d] the jury to find that the testimony of the officer and agents were not credible and to send a message [that] their outrageous tactics will not be tolerated by finding Mr. Maher not guilty."  (Id. at 23.)  Maher notes that the jury seemed to consider this argument as they sent a note to the Court asking for an explanation of probable cause for the arrest on the OUI charge.  (Id.)  He also recognizes that his attorney argued that the court should answer this jury query with a definition but the court concluded that the legal question had been settled by the ruling on the motion to suppress.  (Id.)

Boiled down, it is Maher's claim in this ground that the testimony of Perry, Fogg, and Connelly would have strengthened the defense's argument vis-à-vis the credibility of the law enforcement officers involved in Maher's arrest and, thus, he was prejudiced because the outcome of the proceedings might have been different.  (Id. at 23-24.)  With respect to his attorney's performance, Maher maintains that it was not sound trial strategy not to call these three witnesses.  (Id. at 24.)

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  From the argument advanced by Maher and after review of the affidavits filed by Maher of these three witnesses, I am satisfied that Maher has not overcome the presumption that the decision not to pursue the testimony of these three witnesses was sound strategy, both with respect to the motion to suppress and trial.

5

See Owens v. United States, 483 F.3d 48, 69 (1st Cir. 2007); Lema v. United States, 987 F.2d 48, 54 -55 (1st Cir. 1993); United States v. Porter, 924 F.2d 395, 397 (1st Cir. 1991). Per the decision on direct appeal, the arrest of Maher on the OUI charge and the search was valid. Maher, 454 F.3d at 15. To reiterate:

> The government needed to prove only that Maher possessed, with the intent to distribute, cocaine. See 21 U.S.C. § 841(a). This was proven by what was in his van: cocaine in amounts too large to be explained by personal use; a digital scale; multiple baggies of drugs (a fact consistent with distribution); a slip of paper with the name of the informant who arranged the buy. Further, the police saw Maher walking around the assigned meeting place for a second potential drug sale, calling out the name he had been given.

Id. at 23 (footnote omitted). Maher is focusing on events and relationships surrounding his arrest that are immaterial to the key legal issues underpinning his arrest, the federal charges, and, ultimately, his conviction.

**Attorney's Actual Conflict of Interest**

With regards to his second 28 U.S.C. § 2255 ground, Maher charges his trial attorney of laboring under an actual conflict of interest during his representation of Maher. Maher explains that his attorney was referred to Maher by Ms. Robin Gibbons, a paralegal who Maher had had intimate relations with in the past. (Sec. 2255 Mem. at 26; Maher Decl. ¶¶ 2-28.)[5] According to Maher, after the trial he discovered that his attorney and Ms. Gibbons were intimately involved "at that time, and when their relationship ended," his attorney "was upset and distraught." (Sec. 2255 Mem. at 26-27.) Maher relies on the following paragraphs of his own declaration:

> After the trial, I contacted Robin to voice my disappointment with [my attorney's] representation. I explained how he failed to call my witnesses for the suppression hearing or trial. As a paralegal, Robin could

---

[5] Although how far in the past this was remains unclear on this record, I am pretty sure that if there was such a relationship it had dissolved prior to the attorney's representation of Maher.

> identify with the legal deficiencies in [my trial attorney's] performance. When I explain[ed] that I felt he had an obsession for her and appeared to be upset once I told him not to ask about her, she indicated that they were intimately involved at one time and that he seemed infatuated with her. She explained that because of the age gap between them, they were incompatible. She further indicated that when the relationship ended, [my attorney] would still call frequently, and come by her house and job. Rather than shun him, she said that she remained cordial and would occasionally refer him to potential clients.
>
> Significantly, Robin indicated that after she made past referrals, [Maher's attorney] would contact her and insist on taking her out someplace nice as a token of his appreciation. I concluded that this was why he continuously prodded me to contact Robin.
>
> Clearly, [my attorney's] obsession with Robin and my refusal to act as a conduit between them created an aversion on his part that adversely affected his ability to adequately represent me in my criminal case.

(Maher Decl. ¶¶ 28, 29, 30.) Maher has not provided the Court with an affidavit by Ms. Gibbons in support of these assertions and his representations as to what she told him about his attorney are inadmissible hearsay vis-à-vis the truth of the matter that he seeks to establish.

With regards to his conflict of interest argument, Maher also asserts that, from the outset of his work with his attorney, his attorney would always ask Maher to contact Ms. Gibbons and he speculates that his attorney was hoping that Ms. Gibbons's referral "was a sign that she was willing to see him again." (Sec. 2255 Mem. at 27; Maher Decl. ¶18.) When Maher told his attorney that he did not want to discuss Ms. Gibbons anymore, Maher represents that his attorney "became indifferent to everything Mr. Maher suggested or requested." (Sec. 2255 Mem. at 27; Maher Decl. ¶18.) As evidence of this indifference Maher points to his attorney's failure to interview and utilize Perry, Fogg, and Connelly in the motion to suppress hearing or at trial. (Sec. 2255 Mem. at 27-28.) He also asserts that his attorney did not inform him of the filing of the 21 U.S.C. § 851 information charging the prior convictions and complains that his attorney did not take

7

the time to research the nature of these prior offenses towards mounting a challenge. (Id. at 28.) Maher further maintains that his attorney's conflict of interest was to blame for his failure to object to the erroneous admission of hearsay evidence during Officer MacVane's testimony. (Id. at 28-29.) Finally, Maher argues that his attorney presented an "indefensible argument based on a misconception of the law in Maine" in pressing the motion to suppress and, even after this theory was rejected by the court, his attorney continued to rely on it as a defense at trial. (Id. at 29.)

      I simply cannot identify a tenable claim of conflict of interest in the arguments and limited creditable facts presented by Maher in support of this ground. The core of this claim boils down to Maher's speculation that his attorney lost interest in his case because Maher refused to facilitate his attorney's contact with Ms. Gibbons. Even if there was more than highly questionable speculation, see Owens, 483 F.3d at 57; United States v. McGill, 11 F.3d 223, 225-26 (1st Cir. 1993), "proof of actual conflict (at least in situations where it is not obvious) has two components, each of which the defendant must show: '(1) the attorney could have pursued a plausible alternative defense strategy and (2) the alternative trial tactic was inherently in conflict with or not pursued due to the attorney's other loyalties or interests.'" Reyes-Vejerano v. United States, 276 F.3d 94, 97 (1st Cir. 2002) (quoting Familia-Consoro v. United States, 160 F.3d 761, 764 (1st Cir. 1998) and citing Brien v. United States, 695 F.2d 10, 15 (1st Cir.1982)); see also Mickens v. Taylor, 535 U.S. 162, 174 (2002)(" It was at least necessary, to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's performance.") Not only have I concluded that the other defense strategies envisioned by Maher were not "plausible" in the sense of making a meaningful mark on the

8

Government's case, there is no tangible evidence to support a conclusion that any trial tactic that might have been pursued could have possibly conflicted with Maher's attorney alleged romantic hopes vis-à-vis Ms. Gibbons.[6]

**Attorney's Failure to Object to the Admission of Hearsay Testimony**

Maher's third ground targets his attorney's performance regarding the testimony of Officer Ernest MacVane and the admission of hearsay statements. (Sec. 2255 Mem. at 30 -37.)   The First Circuit gave a great deal of attention to this aspect of the trial in ruling on Maher's Confrontation Clause challenge on direct appeal.  See Maher, 454 F.3d at 19 - 23.  In sum it concluded:

> Maher argues there were twelve instances at his trial in which hearsay was erroneously admitted, and that consequently he is entitled to a new trial. He lumps them together and argues that the admission of the testimony violated his constitutional rights under the Confrontation Clause of the Sixth Amendment, as defined in Crawford v. Washington, 541 U.S. 36 (2004). He did not object to the majority of this testimony, and he cannot show plain error. Where he did object, no Confrontation Clause issue is presented.

Id. at 19.

With regards to the performance prong of Strickland, Maher argues:  "To properly avoid Officer[] MacVane's interjection of the hearsay statement implicating Mr. Maher as Mr. Johnson's drug source, [Maher's attorney] should have filed a motion in limine to exclude any reference by AUSA Bunker in objecting to this line of Questioning." (Sec. 2255 Mem. at 33.)

---

[6]    Indeed, Maher's argument is a little counterintuitive because if Ms. Gibbons did go out of her way to recommend the attorney to Maher and if he saw this referral as an opportunity to renew contact with Ms. Gibbons in makes no sense that he would chose to adopt a trial strategy that was less likely to succeed for Maher.  Commonsense counsels that the attorney would want to succeed with the Maher case to foster future referrals from/contact with Ms. Gibbons.

9

Maher also insists that the evidence at trial was flimsy in terms of his intent to sell cocaine to Johnson or Connelly. (Id. at 33-35.)  For instance, he opines:  "[T]he evidence indicates that Mr. Maher had beer and heroin, as well as cocaine in his possession.  Any of these substances, or none at all could have been intended for Sue." (Id. at 35.) He characterizes his pre-arrest behavior -- stumbling about in the parking lot, calling for Sue -- as "hardly the common practice of a person intending to engage in an illegal drug deal." (Id.)  In Maher's view, these points tie into his ineffective assistance of counsel claim apropos the admission of hearsay evidence because, "the only evidence adduced to support the inference that Mr. Maher harbored the specific intent to distribute cocaine to a person, is the hearsay evidence improperly interjected by Office[r] MacVane accusing Mr. Maher [of] being the person who had supplied Mr. Johnson with the cocaine seized from him when he was arrested." (Id. at 36.)   Maher then argues that the error in allowing the admission of this hearsay testimony was not harmless "because the evidence against Mr. Maher regarding his specific intent to distribute cocaine to another person was not overwhelming."  (Id.)

Given the First Circuit's thoroughgoing plain error analysis, I conclude that Maher cannot make the Strickland prejudice showing apropos the failure to object to this hearsay evidence. See United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004); Ramirez-Burgos v. United States, 313 F.3d 23, 32 -33 (1st Cir. 2002); Taveras v. United States, 432 F.Supp.2d 140, 143 -144 & n.3 (D. Me. 2006); Rodriguez Rodriguez v. United States, 130 F.Supp.2d 313, 318 -319 & ns. 1& 2 (D.P.R.2000); see also e.g., Gordon v. United States, 518 F.3d 1291, 1298 (11th Cir. 2008); United States v. Lalonde, 509 F.3d 750, 759 (6th Cir. 2007).  With regards to Maher's attorney's performance, in

view of the length to which the First Circuit Panel went to dissect the issue and set some clear precedent on the particular question of the intersection between informant hearsay and an agent's testimonial explanation of how he or she came to a certain point in an investigation, it is hard to seriously fault defense counsel's failure to press the issue at trial. The First Circuit recognized that the dividing line "between what is true background to explain police conduct (and thus an exception to the hearsay rule and thus an exception to Crawford) and what is an attempt to evade Crawford and the normal restrictions on hearsay" is often unclear. Maher, 454 F.3d at 23.

### Attorney's Failure to Object to the Characterization of a Prior State Misdemeanor Drug Conviction as a U.S.S.G. § 4B1.2(b) Controlled Substance Offense

In his final 28 U.S.C. § 2255 ground Maher complains of his counsel's failure to object to his 21 U.S.C. § 851 sentencing enhancement based on the information which listed a 1997 Massachusetts Class D drug offense judgment and a 1998 Maine trafficking offense. Maher contends that he was not aware that his information had been filed until he received a copy of the Pre-sentence Investigation Report. (Sec. 2255 Mem. at 38; Maher Decl. ¶ 30.) He reports that on receipt of this information he informed his attorney that the Massachusetts conviction was a misdemeanor but his attorney made no effort to challenge the applicability of § 851 to Maher's case. (Sec. 2255 Mem. at 38; see also id. at 40.) Maher recognizes that this Court considered Maher's pro se challenge on this score prior to sentencing Maher, but believes that he was not able to sufficiently articulate his legal argument. (Id. at 40-41.)

The bottom line is that the question of whether or not this conviction was "usable" was made by this Court when overruling Maher's pro se objection at the sentencing

11

hearing. (Sentencing Tr. at 13.) The Court gave Maher an opportunity to support his claim that he did not receive notice of the § 851 information and Maher declined the invitation. (Id. at 7.) There is certainly no Strickland shortfall here as Maher has yet to advance a "legal argument" that could have dissuaded this Court from counting this conviction as a predicate felony.

*Conclusion*

For the reasons above I recommend that the Court summarily deny Maher's 28 U.S.C. § 2255 motion.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 7, 2008.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge